UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASVILLE DIVISION

| JERRY HARDAWAY, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) No. 3:22-cv-00395 |
| WILLIAM LEE, et al., | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Before the Court is Plaintiff Jerry Hardaway's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. No. 12). Mr. Hardaway's request for a temporary restraining order was denied on August 10, 2022, but his request for a preliminary injunction is pending (Doc. No. 15). The Court will grant the requested preliminary injunction.

I. BACKGROUND

A. Tennessee's Sex Offender Registry Laws

Tennessee's first sex offender registry law, the Sexual Offender Registration and Monitoring Act ("SORMA"), became law in 1994. 1994 Tenn. Pub. Acts, ch. 976. SORMA required registration for individuals convicted of any one of several identified sexual offenses, "unless the offender had been wholly released without supervision from incarceration, prohibition, or parole prior to January 1, 1995." Doe v. Haslam, No. 3:16-cv-02862, 2017 WL 5187117, at *1 (M.D. Tenn. Nov. 9 2017) (C.J. Crenshaw). Thus, SORMA created a "subset of defendants who were—or, upon release, would become—required to register based on crimes they committed before the [law] was adopted." Does #1–10 v. Lee, No. 3:21-cv-00590, 2022 WL 2252958, at *1 (M.D. Tenn. Jun. 22, 2022) (J. Trauger). In the ensuing decade, the General Assembly repeatedly

amended SORMA to expand its scope, to increase the reporting requirements placed on registered offenders, and to reduce the level of confidentiality of registry information. Haslam, 2017 WL 5187117, at *2; see, e.g., 2003 Tenn. Pub. Acts. Ch. 95, § 1 (making it a Class A misdemeanor for a registered offender to, among other things: establish a residence or accept employment within 1,000 feet of a school, child care facility, or the home of their victim or the victim's immediate family member; establish a residence or other living accommodation with a minor who was not the registered offender's own child; or establish residence with the registered offender's own minor child, if any child had been the offender's victim or if the offender's parental rights had been or were being terminated).

In 2004, the Tennessee General Assembly repealed SORMA and replaced it with SORA, which continues today in amended form. 2004 Tenn. Pub. Laws, ch. 921. The Act continued a similar but more stringent version of mandatory registration. See Tenn. Code Ann. § 40-39-204(b)–(c). Unlike SORMA, SORA requires offenders to register and report in person. Tenn. Code Ann. §§ 40-39-203(a), 40-39-204(b). Reports based on certain triggering events, such as a change of residence or employment, must be made within 48 hours. Tenn. Code Ann. § 40-39-203(a)(3)–(6). The Act also increased the amount of information required to be reported, Tenn. Code Ann. § 40-39-203(h), and requires offenders to pay administrative fees related to their ongoing inclusion on the registry. Tenn. Code Ann. § 40-39-204(b)–(c). What is more, under SORA, any violations of the Act's requirements are deemed a felony (as opposed to a misdemeanor under SORMA). Tenn. Code. Ann. § 40-39-208. Like SORMA, SORA has also been repeatedly revised and amended to increase its restrictions, requirements, and to make more information about registrants publicly available. Haslam, 2017 WL 5187117, at *3. Among these changes were the imposition of lifetime registration requirements for certain offenders, 2015 Tenn. Pub. Acts, ch

516, § 1; the imposition of requirements for registrants to carry photo identification, 2010 Tenn. Pub. Acts, ch. 1145, § 1; and allowing public libraries to restrict access to registrants. 2011 Tenn. Pub. Acts, ch. 287, § 1.[1]

At bottom, "as amended, . . . [SORA] treats the registry, not chiefly as an informational resource, but as the criterion pursuant to which a subset of the state's population is made subject to a complex and demanding set of regulations on their behavior, including where they can live and work." Does #1–10, 2022 WL 2252958, at *1 (J. Trauger).

B. Hardaway's Story

On July 24, 1995, Hardaway was convicted in the Davidson County Criminal Court of two counts of Aggravated Rape under Tenn. Code Ann. § 39-13-502 for offenses committed in 1990 and 1991 (Doc. No. 13 at 3). He served two consecutive 20-year sentences as punishment. (Id.). After his release from prison in August 2018, he remained on supervision until late February 2022 when his sentence fully expired. (Id.). Still, Hardaway was required to register under SORMA and remains subject to the full panoply of restrictions it imposes based solely on offenses that occurred prior to the enactment of SORA. (Id.).

Hardaway is now in his early 70s and suffers from obesity and Type II diabetes. (Id. at 4). Since his release, he has reunited with a past romantic interest, with whom he has both children and grandchildren. (Id.). The two are now engaged to be married, but Hardaway has been informed that they cannot live together if his fiancé's granddaughter lives with them. (Id. at 3–4). Aware of his age and health conditions, Hardaway asserts that without an injunction he will continue to lose precious family time. (Id. at 21–22).

---

[1] This Court has previously detailed a decade's worth of amendments to SORA and refers to that discussion here. Doe v. Haslam, No. 3:16-cv-02862, 2017 WL 5187117, at *3 (M.D. Tenn. Nov. 9 2017) (discussing SORA's amendments between 2005 and 2015).

3

On August 9, 2022, Hardaway filed a Motion for a Temporary Restraining Order and Preliminary Injunction (Hardaway Doc. No. 12) requesting this Court to prohibit Defendants from enforcing SORA against him, "including the continued publication of Plaintiff's information on the sex offender registry." (Id. at 1). Hardaway contends that SORA is unconstitutional because its enforcement contravenes the Ex Post Facto Clause. (Hardaway Doc. No. 13 at 1).

## II.     LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." Overstreet v. Lexington-Fayette Urban Cnty. Gov't, 305 F.3d 566, 573 (6th Cir. 2011). The party seeking the preliminary injunction bears the burden of justifying such relief. McNeilly v. Land, 684 F.3d 611, 615 (6th Cir. 2012), by presenting more than scant evidence to substantiate the allegations. Libertarian Party of Ohio v. Husted, 751 F.3d 403, 417 (6th Cir. 2014); see also Cameron v. Bouchard, 815 F. App'x 978, 986 (6th Cir. 2020) (vacating preliminary injunction when plaintiffs made mere allegations on some element but not all of their claim).

The Court considers four factors in determining a motion for preliminary injunction under Federal Rule of Civil Procedure 65: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to the opposing party or others; and (4) whether the public interest would be served by the issuance of the injunction." Daunt v. Benson, 956 F.3d 396, 406 (6th Cir. 2020) (citing Bays v. City of Fairborn, 688 F.3d 814, 818–19 (6th Cir. 2012)) (internal quotations omitted); see also Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

Generally, "district courts weigh the strength of the four factors against one another," in what is commonly described as a "balancing test." D.T. v. Summer Cnty. Schs., 942 F.3d 324, 326 (6th Cir. 2019). The inquiry is not a pure balancing test. The first factor "is not far from effectively being a prerequisite, inasmuch as a finding that there is simply no likelihood of success on the merits is usually fatal." Doe #11 v. Lee, No. 3:22-cv-00338, 2022 WL 218 WL 2181800, at *7 (M.D. Tenn. June 16, 2022) (Richardson, J.) (quoting Carter v. Tenn. Dep't of Child.'s Servs., No. 22-cv-00247, 2022 WL 1144134, at *2 (M.D. Tenn. Apr. 18, 2022)). Likewise, the second factor—likelihood of irreparable injury absent the injunction—is often the touchstone for relief. See D.T., 942 F.3d at 326–27 ("[E]ven the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.' That factor is indispensable[.]") (quoting Friendship Materials. Inc. v. Mich. Brick, Inc., 679 F.2d 100, 105 (6th Cir. 1982)).

The analysis in constitutional cases often depends on the first factor because when constitutional rights are threatened or impaired, irreparable injury is presumed." Vitolo v. Guzman, 999 F.3d 353, 360 (6th Cir. 2021) (internal quotations and citations omitted). What's more, "[n]o cognizable harm results from stopping unconstitutional conduct," and preventing the violation of a party's constitutional right is never against the public interest. Id. (quoting Déjà Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty. 274 F.3d 377, 400 (6th Cir. 2001)). Thus, as the Sixth Circuit has stated and reaffirmed, "in constitutional cases, the first factor is typically dispositive." Id. (citing Roberts v. Neace, 958 F.3d 409, 416 (6th Cir. 2020)).

### III. ANALYSIS

The Plaintiff seeks injunctive relief prohibiting the application of SORA, because the registry law is unconstitutional under the Ex Post Facto Clause. (Doc. No. 13). Defendants argue that Plaintiff is not entitled to injunctive relief and should remain bound to SORA's requirements

based on the nature of his offenses. (See Hardaway Doc. No. 19 at 8, 15). "[W]hile many . . . sex offenses involve abominable, almost unspeakable, conduct that deserves severe legal penalties, *punishment may never be retroactively imposed or increased*." Does #1–5 v. Snyder, 834 F.3d 696, 705 (6th Cir. 2016) (emphasis added). SORA retroactively punishes the Plaintiff, requiring injunctive relief.

    A. Plaintiff is Likely to Succeed on the Merits of his Constitutional Claim

As with all Ex Post Facto challenges, to succeed, Plaintiff must establish two elements. First, that the law is enforced against him retroactively—that is, "it must apply to events occurring before its enactment." United States v. Kruger, 838 F.3d 786, 790 (6th Cir. 2016). Second, an Ex Post Facto law must be punitive (as opposed to civil): "the Constitution's ban on Ex Post Facto laws does not bar all retroactive lawmaking, but only retroactive punishment." Snyder, 834 F.3d at 699. Both elements are satisfied here.

    a. SORA is Retroactive

The relevant date for determining retroactivity is the date the offense was committed. Doe v. Bredesen, 507 F.3d 998, 1003 (6th Cir. 2007). All relevant offenses were committed by 1991. (Hardaway Doc. No. 13 at 3). As stated above, SORA was enacted in 2004, well over a decade after any of the relevant offenses were committed. Defendants concede that SORA and its provisions are retroactive here. (See generally Hardaway Doc. No. 19). They are right to do so— even SORMA, the Act's predecessor and Tennessee's first sex offender registry law, was enacted years after the relevant offenses were committed. See 1994 Tenn. Pub. Acts, ch. 976. SORA's application is retroactive.

### b. SORA has a Punitive Effect

Courts in this district have held Tennessee's SORA provisions to be punitive as a matter of law. See, e.g., Does #1-9 v. Lee, No. 3:21-CV-00590, 2023 WL 2335639, at *14–17 (M.D. Tenn. Mar. 2, 2023) (Trauger, J.); accord Doe v. Rausch, 461 F. Supp. 3d 747, 769 (E.D. Tenn. 2020) (Reeves, C.J.); Doe v. Rausch, 382 F. Supp. 3d 783, 799–800 (E.D. Tenn. 2019) (Phillips, J.). The circumstances in those cases, mirror those here. See Lee, 2023 WL 2335639 at *7 ("Each of the plaintiffs was convicted of a sexual offense or offenses that occurred prior to January 1, 1995. . . . For each plaintiff, his pre-1995 behavior and the resulting conviction or convictions are the sole reason that he is required to comply with the Act. . . . Each plaintiff is classified as a 'violent sexual offender.'"). We find this element satisfied for the purposes of the requested preliminary injunction, as have several other courts in this district. See Does #1-9 v. Lee, 574 F. Supp. 3d 558, 561–62 (M.D. Tenn. 2021) (Trauger, J.); Doe #11, 2022 WL 2181800 at Doe #11 v. Lee, 609 F. Supp. 3d 578, 615 (M.D. Tenn. 2022) (Richardson, J.); Reid v. Lee, 476 F. Supp. 3d 684, 705–08 (M.D. Tenn. 2020) (Trauger, J.).

In Snyder, the Sixth Circuit found five factors essential to considering whether SORA has a punitive effect: "(1) Does the law inflict what has been regarded in our history and traditions as punishment?"; "(2) Does it impose an affirmative disability or restraint?"; "(3) Does it promote the traditional aims of punishment?"; "(4) Does it have a rational connection to a non-punitive purpose?"; and "(5) Is it excessive with respect to this purpose?" 834 F.3d at 701 (citing Smith v. Doe, 538 U.S. 84, 97 (2003)). The court found that each factor weighed in favor of finding a Michigan sex offender registration law punitive. Id. at 701–05. Specifically, it concluded that the Michigan law's provisions were equivalent to traditional punishments of banishment, public shaming, and parole/probation, overbearing in their "regulation of where registrants may live,

7

work, and 'loiter[,]" excessive, and wholly incapacitating, retributive and deterring, without a non-punitive purpose. Id.

This Court joins other courts in the Middle District that have already declared SORA punitive on the same bases. See, e.g., Lee, 2023 WL 2335639 at *14–17 (finding all five factors similarly punitive to the extent that "[t]he Sixth Circuit's conclusion[s in Snyder] . . . can simply be imported, effectively word-for-word, into an analysis of Tennessee's Act."); Doe #11, 609 F. Supp. 3d at 601–09; Reid v. Lee, 597 F. Supp. 3d 1177, 1200 (M.D. Tenn. 2022) (Trauger, J.). Defendants have no answer for these findings, merely reiterating bases that have already been found insufficient to disprove SORA's punitive effects. Compare, e.g. Lee, 2023 WL 2335639 at *15 ("The Governor and Director argue that the Act is not comparable to shaming because the Act 'does not promote face-to-face shaming'"), with (Doc. No. 19 at 8) ("The Act neither promotes face-to-face confrontations between the public and offenders nor seeks to humiliate the offender."). We find such arguments equally unavailing. Does #1–9 v. Lee, 574 F. Supp. at 561 (M.D. Tenn. 2021) ("The question of whether Tennessee's ex post facto application of its sexual offender requirements to individuals like [Plaintiff] is illegal under Snyder may not be entirely beyond debate, but the issue has been addressed so clearly and so many times that the Court assumes that all of the attorneys and government officials involved understand the basic jurisprudential lay of the land.").

Defendants' invitation to ignore binding precedent rings hallow as well. Specifically, they argue "that *Snyder* was wrongly decided and that the conclusions reached in *Snyder* cannot and should not be transposed to Tennessee's Act." Doc. No. 19 at 8. However, their sole basis for this conclusion is the existence of other circuit courts upholding other different sexual registration laws in other states. Id. at 8 n.1. The Court is not persuaded. See Timmereck v. United States, 577

8

Case 3:22-cv-00395   Document 24   Filed 03/31/23   Page 8 of 10 PageID #: 157

F.2d 372, 374 n. 6 (6th Cir.1978) ("The district courts in this circuit are, of course, bound by pertinent decisions of this Court even if they find what they consider more persuasive authority in other circuits."), rev'd on other grounds, 441 U.S. 780 (1979). Plaintiff's Ex Post Facto claim is likely to succeed on the merits.

B. The Irreparable Harm Factor Weighs in Plaintiff's Favor.

Likewise, Plaintiff is likely to suffer irreparable injury without an injunction. When a constitutional right is threatened or impaired, "a finding of irreparable injury is mandated," Bonnell v. Lorenzo, 241 F.3d 800, 809 (6th Cir. 2001), or is at the very least presumed. Vitolo, 999 F.3d at 360. Having established a likelihood of success on the merits of Plaintiff's constitutional claim, there is a presumption that he faces irreparable injury absent a preliminary injunction.

Defendants do nothing to rebut this presumption. They argue that preliminary injunctions are reserved for maintaining the status quo until trial, and Plaintiffs' request would upset this purpose. (Doc. No. 19 at 17). However, Defendants' argument fails to appreciate the circumstances present. The "status quo," restrictions on Plaintiff's residence, only exists due to the violation of his constitutional rights. See supra, Section III.A. Thus, enforcement of SORA against Plaintiff, constitutes irreparable harm.

C. The Third and Fourth Factors Also Weigh in Plaintiff's Favor

The final two factors—harm to others and harm to the public—"merge when the Government is the opposing party." Wilson v. Williams, 961 F.3d 829, 844 (6th Cir. 2020) (quoting Nken v. Holder, 556 U.S. 418, 435 (2009)). Defendants direct their arguments to SORA's registration and publication requirements. Doc. No. 19 at 17– 19. Without further specificity, Defendants broadly allege that SORA allows the public to protect themselves against individuals who pose a risk of recidivism. (Id. at 18–19).

While the application of SORA has been shown to establish concrete harms, its benefits alleged by Defendants are all speculative. Notwithstanding, the existence of some benefit is "not a license to heap an endless parade of new and severe punishments on individuals whose long-ago offenses carried no such consequences when committed." Lee, 574 F. Supp. at 564. "[N]o cognizable harm results from stopping unconstitutional conduct so 'it is always in the public interest to prevent violation of a party's constitutional rights.'" Vitolo, 999 F.3d 360 (quoting Déjà vu of Nashville, Inc., 274 F.3d at 400); accord Chabad of S. Ohio & Congregation Lubavitch v. City of Cincinnati, 363 F.3d 427, 436 (6th Cir. 2004) ("The public interest is served by preventing the violation of constitutional rights."). Therefore, granting the requested injunction favors will not cause harm to others and favors public interest.

D. On Balance, the Factors Weigh in Each Plaintiff's Favor.

The Court finds that Plaintiff is likely to succeed on the merits of his Ex Post Facto claim; that he will suffer irreparable injury without an injunction; and that its issuance will not cause substantial harm to Defendants, the public, or any third parties. After balancing all of the factors, the Court determines that a preliminary injunction should issue.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE